VILLANTI, Judge.
J.C. appeals the order of restitution entered after he pleaded no contest to one count of grand theft based on his theft of four pocket bikes from store owner Emmett Bradbury. J.C. argues that because Mr. Bradbury purchased the bikes wholesale and could not sell them at their marked retail prices, restitution should have been limited to the wholesale price of the bikes. We hold that the trial court did not abuse its discretion in valuing the bikes at a discounted retail price, and we therefore affirm.
The testimony at the restitution hearing established that Mr. Bradbury owned a retail store called the Roustabout Shop from which he sold both new and used items. Among the items in his inventory were four pocket bikes, which are small off-road motorbikes. Mr. Bradbury testified that he had purchased three of the *347 bikes for $150 each and had them marked for sale at $450 each. He paid $300 for the fourth bike and had it marked for sale at $850. On November 11, 2007, J.C. and several other juveniles broke into the Roustabout Shop, damaging the doors and stealing the four pocket bikes. All four of the bikes were new when they were stolen.
During his testimony, Mr. Bradbury admitted that he had purchased the bikes two years earlier and could no longer get parts for them. He also testified that he had had several offers to purchase the bikes for $100 less than the marked retail price. However, Mr. Bradbury testified that he had refused to accept this discounted price because he did not need to sell the bikes and he was confident that the bikes would sell at their marked retail prices during the upcoming holiday season. J.C. offered no countervailing evidence as to the value of the bikes.
After the conclusion of the testimony at the restitution hearing, the State argued that restitution for the bikes should be awarded based on the marked retail price. J.C. argued that, as a matter of law, Mr. Bradbury should be awarded no more than the wholesale price he had actually paid to purchase the bikes. The trial court rejected both of these arguments and awarded restitution based on the discounted price offered to Mr. Bradbury by the recent interested buyers. J.C. now appeals, challenging the amount of restitution awarded for the bikes.[1]
The wholesale versus retail issue raised in this appeal was directly addressed by this court in Garrison v. State, 553 So.2d 1377 (Fla. 2d DCA 1989). In that case, Garrison pleaded no contest to a charge of grand theft based on allegations that he stole fifteen portable trenching machines from the victim. Id. at 1378. At the restitution hearing, the State presented evidence that the victim manufactured and sold two different trenching machine models. One model cost $900 to manufacture, sold wholesale for $1695, and sold retail for $1995. Id. The other model cost $700 to manufacture, sold wholesale for $1395, and sold retail for $1695. Id. The State also presented evidence that the victim sold eighty percent of his machines retail and twenty percent wholesale. Id. The trial court awarded restitution based on the retail sales price of the stolen machines. Id. Garrison appealed, arguing that this was impermissible because it awarded the victim restitution for lost profits. Id.
On appeal, this court stated that the trial court had before it “evidence concerning three markets: 1) the market in which the victim purchased the materials for his machines; 2) the market in which the machines sold at wholesale; and 3) the market in which the machines sold at retail.” Id. In finding that the trial court had not abused its discretion in using the retail market to set restitution, this court noted that while the cost to manufacture the machines may have been their original cost, the machines were “used” by the victim as inventory for sale. Id. Therefore, the victim was properly permitted to present evidence that the stolen inventory had a value greater than simply its replacement cost. Id. Moreover, this court stated that
[ujnder the evidence presented to the trial court, that court could reasonably conclude that Mr. Garrison effectively *348 stole thirteen retail sales from the victim, and that the victim was entitled to be reimbursed for those thirteen retail sales at their fair market value established by the retail price.
Id. at 1379. Accordingly, because the State established that the victim sold some of the machines in the retail market and because the defendant presented no evidence to show that the retail market was not a relevant market for establishing fair market value, the retail price of the machines was a proper measure of restitution. Id.; compare Nix v. State, 604 So.2d 920, 922 (Fla. 1st DCA 1992) (holding that the retail value of stolen diesel fuel, rather than its wholesale replacement cost, was the proper measure of restitution when the defendant stole the fuel from his employer, a fuel retailer), with Rodriguez v. State, 956 So.2d 1226, 1231-32 (Fla. 4th DCA 2007) (holding that wholesale price, rather than retail price, was the proper measure of restitution when the only evidence presented at the restitution hearing showed that the victim would have sold the stolen product to distributors and so would have received only the wholesale price).
Here, Mr. Bradbury testified that he originally purchased fifteen pocket bikes, paying $150 for one model bike and $300 for the other model. He testified that the bikes were marked for sale at $450 for the cheaper model and $850 for the other and that he had sold all but these four bikes at their marked retail prices. Mr. Bradbury further testified that his most recent potential buyers had offered him $100 less than the marked retail price but that he was not willing to sell the bikes for this discounted price because he would rather wait for the holiday season and try to get the full marked price.
From this testimony, the trial court had three values from which to choose: the wholesale cost Mr. Bradbury paid to purchase the bikes, the retail price Mr. Bradbury was asking for the bikes, and the discounted price recently offered to Mr. Bradbury by several potential buyers. The trial court chose to award restitution based on the discounted price offered to but rejected by Mr. Bradbury, primarily on the basis that this appeared to be the price that a “willing buyer” would pay for the bikes at the time closest to the theft.
In using this value to award restitution, the trial court did not abuse its discretion. See State v. Hawthorne, 573 So.2d 330, 333 (Fla.1991) (holding that the standard of review of an order on restitution is abuse of discretion); Johnson v. State, 942 So.2d 415, 416 (Fla. 2d DCA 2006) (same). Here, as in Garrison, the State proved that the bikes were being “used” by Mr. Bradbury as inventory and that, as inventory, they had a greater value than simply their wholesale replacement cost. The trial court in this case could have reasonably concluded that, like the defendant in Garrison, J.C. stole four retail sales from Mr. Bradbury. While J.C. is correct that the evidence could have supported an award of restitution based on the wholesale cost of the bikes, given the totality of the evidence presented, we cannot say that the trial court abused its discretion by awarding Mr. Bradbury restitution based on the fair market value as established by the most recently offered discounted retail prices. See § 775.089(7), Fla. Stat. (2007) (providing that “[a]ny dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence”). Accordingly, we affirm the restitution order.
Affirmed.
FULMER and STRINGER, JJ., Concur.

. The total amount of restitution awarded was $2448.34. This figure included amounts for the repairs to the damaged doors plus Mr. Bradbury’s lost wages less the amount he received when he sold the recovered bikes for salvage. However, the only portion of the restitution award J.C. challenges in this appeal is the value attributed to the pocket bikes.