JOANOS, Judge.
Melody Thomas appeals from an order of the trial court which directed her to pay restitution in the amount of $4,500 as a condition of probation. The sole issue on this appeal is the propriety of the amount of restitution Thomas was ordered to pay. We reverse.
This restitution order resulted from Thomas’ conduct during the time period that she was a part-time employee of Sears department store. In August of 1983, Sears, as a part of its normal operating procedure, conducted a check of retail credit checks written by Thomas, who had been a Sears employee since August 1982. Sears sent inquiry letters to some of the persons who purportedly received credit checks from Thomas. When four of these letters were returned marked addressee *159 unknown or incorrect address, Sears conducted a complete audit of all credit checks written by Thomas. This audit indicated Thomas had written approximately $5,000 in fictitious credit checks, beginning in February 1983 and continuing until October 1983. When Thomas was confronted with these findings, she admitted the thefts and gave a statement to Sears’ assistant store manager. The assistant manager thereupon reported the matter to the police and Thomas was arrested.
In an interview with a Tallahassee Police Investigator, Thomas explained the procedure she employed in the thefts. According to Thomas, she would fill out the fictitious credit check with the item, stock number, price, sales tax, date, name, address, and phone number of the customer, and then have the credit check approved. Then she would treat the credit check as a customer would when using a credit check to make a purchase. In other words, Thomas would ring up bogus merchandise on the register, pay for the non-existent merchandise with the credit check, then she would take the change that the customer would have received. She estimated that she had taken a total of $2,700 to $2,800. She used part of the money to purchase items from Sears, part she spent on groceries, and the remainder she used to pay student loans and department store charge accounts which she and her grandmother had incurred jointly before her grandmother’s death.
By information dated October 26, 1983, Thomas was charged with grand theft. Although the plea negotiations have not been made a part of this record, on February 7, 1984, the trial court entered an order withholding adjudication of guilt and placing Thomas on probation for three years. Two of the special conditions of Thomas’ probation required her to make restitution as established by written order of the court, and to serve eight weekends in the Alternative Community Service Program.
On August 3, 1984, a restitution hearing was held. At the hearing, Sears’ assistant store manager stated that Thomas had written sixty fraudulent credit checks against Sears in the total amount of $5,444.50. The assistant manager explained that a credit check which is issued when a customer returns an item to the store may then be used to purchase another item or to get a full cash refund. In the event a customer wanted a full refund, he or she would have to take the credit check to the main cashier in the office. If, however, a customer used the credit check to purchase a less expensive item, a clerk on the floor would handle the transaction and give the customer the amount of change due. Sears has no procedure to show whether a credit check has been used as an exchange or as a return for a full cash refund. Thus, Sears had no method whereby it could determine whether Thomas had taken the full amount that appeared on the credit slips. Sears personnel simply to-talled all the credit slips Thomas had written, which resulted in the $5,444.50 figure. The assistant manager stated that Sears’ end-of-the-year inventory reflected that the three departments where Thomas had worked were short a total amount of $3,700.
Expressing the view that it would be impossible to arrive at an accurate figure for the amount actually taken by Thomas, the trial court placed restitution at $4,500— deeming this figure the mid point between the $5,444 total of the credit slips and the $2,800 which Thomas thought she had taken.
The applicable provisions governing restitution as a condition of probation are Section 948.03(l)(e), Florida Statutes (1983)[1] *160 and Section 775.089(2), Florida Statutes (1983).[2] These provisions have been construed as requiring the trial court to determine not only the amount of restitution due, but also the defendant’s ability to pay. Ballance v. State, 447 So.2d 974 (Fla. 1st DCA 1984); Harris v. State, 452 So.2d 1041 (Fla. 2d DCA 1984).
A recent case decided by this court, Norman v. State, 468 So.2d 1063 (Fla. 1st DCA 1985), posed a problem comparable to that confronting the trial court in this case, i.e., the amount of restitution to be imposed. In Norman, the appellant had been directed to pay to the victim’s insurance company the full amount which the insurer had paid to the victim for certain motorcycle parts stolen in the robbery. Although the evidence clearly indicated the stolen parts were used and not new, the victim received the wholesale value of new parts pursuant to its insurance agreement. This court found the trial court erred in requiring the appellant to reimburse the insurer for the value of new parts, citing Fresneda v. State, 347 So.2d 1021 (Fla.1977), where “it was held that ‘a condition of probation requiring a probationer to pay money to, and for the benefit of, the victim of his crime cannot require payment in excess of the amount of damage the criminal conduct caused the victim.’ ” See also: Wilson v. State, 452 So.2d 84 (Fla. 1st DCA 1984), wherein this court declared itself unwilling to require a thief to pay back more than the worth of the booty that had been stolen.
In this' case, the trial court was presented with evidence from Sears’ assistant manager that (1) Thomas had written credit checks in the total amount of $5,444.50, (2) the three departments in which Thomas had worked had a total loss of $3,700 for 1983, and (3) Sears had no procedure by which it could determine the exact amount of money which Thomas had taken.
We recognize that the $4,500 figure set by the trial court as the amount of restitution due to Sears was a commendable effort to deal fairly with both parties. Nevertheless, in our view the record does not support the $4,500 amount. We consider that the $3,700 figure, which represents the total loss for the three departments in which Thomas worked, is the maximum figure that will comport with the evidence. Therefore, we reverse and remand with directions to amend the restitution order to reflect the amount of $3,700.
Reversed and remanded for proceedings consistent with this opinion.
ERVIN and BARFIELD, JJ., concur.

. § 948.03(l)(e), Fla.Stat. (1983), provides:
(1) The court shall determine the terms and conditions of probation or community control and may include among them the following, that the probationer or offender in community control shall: ...
(e) Make reparation or restitution to the aggrieved party for the damage or loss caused by his offense in an amount to be determined by the court. The court shall make such reparation or restitution a condition of probation, unless the court determines that compel *160 ling and extraordinary reasons exist to the contrary.

. § 775.089(2), Fla.Stat. (1983), provides:
(2) In determining the amount and method of payment of restitution, the court shall consider the financial resources of the defendant and the burden the payment of restitution will impose on the defendant.